### 74473. MITCHELL v. MITCHELL et al.
(363 SE2d 159)

CARLEY, Judge.

A series of cases ultimately culminates in this appeal. The series begins with the judgment and decree of divorce issued in 1982 by the Superior Court of Berrien County dissolving the marriage of appellee Mrs. Dana Mitchell and appellant Mr. Richard Mitchell (Divorce Action). The decree in this Divorce Action incorporated a settlement agreement whereby the permanent custody of Mr. and Mrs. Mitchell's only child was awarded to appellee Mrs. Mitchell and visitation rights were granted to appellant.

Subsequently, appellant filed a complaint requesting a change with regard to his visitation rights (Parental Visitation Rights Action). Appellant was represented in his Parental Visitation Rights Action by an attorney. Appellant's visitation rights were eventually amended in conformity with a new settlement agreement executed by the parties and entered as an order of the court.

Shortly thereafter, in January of 1984, appellant filed a petition for change of custody (Parental Custody Action). In this Parental Custody Action, the trial court entered an order which did the following: granted temporary custody to appellant on the condition that he not remove the child from Berrien County until further order of the court; granted temporary visitation rights to the maternal grandparents, appellees Mr. and Mrs. Turner; and, set a date for a hearing on permanent custody. Prior to the date set by the trial court for the hearing on permanent custody, however, appellant filed an agreement with the court. This agreement, which was signed by both appellant and appellee Mrs. Mitchell, purported to give permanent custody of the child to appellant. Although this agreement between Mr. and Mrs. Mitchell as to permanent custody was filed with the court, it was

never incorporated into an order of the court. No hearing on appellant's petition for permanent custody was held and, shortly after the change of custody agreement had been filed with the court, appellant left Georgia with the minor child.

Less than six months later, appellees Mr. and Mrs. Turner filed their independent action for grandparents' visitation rights (Grandparents' Visitation Rights Action). This Grandparents' Visitation Rights Action was brought under OCGA § 19-7-3 and appellant was named as the defendant therein. There is a dispute as to whether appellant, who was no longer living in Georgia, was ever served with the petition for grandparents' visitation rights. However, it is clear from the record that appellant did not appear to contest appellees Mr. and Mrs. Turner's claim and that the court entered a final order which granted to them the grandparents' visitation rights that they sought. The attorney who represented appellees Mr. and Mrs. Turner in their Grandparents' Visitation Rights Action and who has continued to represent them in all subsequent proceedings is the same attorney who represented appellant in his Parental Visitation Rights Action.

Subsequently, in June of 1986, appellee Mrs. Mitchell went to Oklahoma, where appellant was then living with the child. Under circumstances that remain unclear, appellee Mrs. Mitchell returned with the child to Berrien County. Appellant swore out a warrant against appellee Mrs. Mitchell for "child stealing" and in late June of 1986, she was arrested in Berrien County under the Oklahoma warrant.

On June 30, 1986, appellees Mr. and Mrs. Turner filed a pleading which they styled as an amendment to the petition which had initiated their Grandparents' Visitation Rights Action in 1984. In this amendment, appellees Mr. and Mrs. Turner sought custody of their grandchild (Grandparents' Custody Action). The trial court granted appellees Mr. and Mrs. Turner temporary custody pending a hearing on permanent custody.

On July 10, 1986, the trial court conducted a hearing and entered an order which purported to consolidate the following series of cases: the original 1982 Divorce Action; appellant's 1984 Parental Custody Action; and, appellees Mr. and Mrs. Turner's 1984 Grandparents' Visitation Rights Action and their 1986 Grandparents' Custody Action. Thereafter, the trial court entered a final judgment in the consolidated case which granted permanent custody of the child to appellees Mr. and Mrs. Turner and which granted to appellee Mrs. Mitchell and appellant only limited visitation rights. Pursuant to this court's grant of his application for a discretionary appeal, appellant brings this appeal from the trial court's order awarding permanent custody of his son to appellees Mr. and Mrs. Turner.

1. Several of appellant's enumerations of error relate to the issue of the jurisdiction of the trial court.

The Parental Custody Action, which had been filed by appellant in 1984, had only resulted in an award of temporary custody to appellant. "[A] judgment awarding temporary custody is not a final judgment but only interlocutory and does not adjudicate the parental rights of the parties nor suspend them. . . ." *Adams v. State*, 218 Ga. 130, 132-133 (126 SE2d 624) (1962). The agreement between Mr. and Mrs. Mitchell purporting to give permanent custody to appellant was of no legal effect, did not serve to terminate the Parental Custody Action, and appellee Mrs. Mitchell thereafter still retained permanent custody pursuant to the divorce decree. "Where the issue of custody has been previously adjudicated by a court of competent jurisdiction in a divorce case, the children become wards of the court, and no contract of the parties attempting to change custody of the children is binding on the court. [Cits.]" *Wood v. Knight*, 221 Ga. 746, 748 (1) (146 SE2d 880) (1966). Although the agreement between Mr. and Mrs. Mitchell purporting to change permanent custody to appellant was filed with the court, it was never incorporated into an order of the court. *Fortson v. Fortson*, 195 Ga. 750 (2) (25 SE2d 518) (1943).

It follows that there was never a final order which terminated the Parental Custody Action. Since five years had not elapsed subsequent to the last order which had been entered in the Parental Custody Action, it follows that that action was still pending before the trial court. Since the Parental Custody Action was still pending, it follows that the trial court had personal jurisdiction over appellant, who initiated that action, and jurisdiction over the subject matter of the permanent custody of the child. " 'A court, having obtained jurisdiction, retains it until the final disposition of the cause.' [Cit.]" *Slater v. Slater*, 216 Ga. 242, 245 (115 SE2d 353) (1960). See also *Brewer v. Williams*, 210 Ga. 341 (1) (80 SE2d 190) (1954); *Terhune v. Pettit*, 195 Ga. 793 (25 SE2d 660) (1943).

2. Appellant enumerates as error the trial court's grant of permanent custody, contending that appellees Mr. and Mrs. Turner had filed no viable pleadings pursuant to which the trial court was authorized to award them custody.

The only pleading ever filed by appellees Mr. and Mrs. Turner wherein they sought permanent custody of the child was the purported 1986 amendment to the petition which had initiated their 1984 Grandparents' Visitation Rights Action. A final order in the Grandparents' Visitation Rights Action had been entered long before appellees Mr. and Mrs. Turner had attempted to amend their petition for those visitation rights so as to seek permanent custody. "[A] pleading may be amended *after* judgment but *only* insofar as to make it conform to the evidence. [Cit.]" (Emphasis in original.) *Buffington v. Nalley Discount Co.*, 117 Ga. App. 820 (162 SE2d 212) (1968). Thus, the 1986 amendment to the petition which had initiated the Grand-

parents' 1984 Visitation Rights Action could not have initiated a viable Grandparents' Custody Action.

However, the trial court did not hold the hearing and enter its order as to permanent custody of the child based solely on the Grandparents' Custody Action. The hearing was held as to all the cases which the trial court had ordered consolidated, including the 1984 Parental Custody Action which had been initiated by appellant against appellee Mrs. Mitchell. As discussed in Division 1, the Parental Custody Action was still pending in the trial court. In a custody suit initiated by one parent against the other, "[t]he trial court has the power to award custody to third persons. . . ." *Guest v. Williams*, 240 Ga. 316 (1) (240 SE2d 705) (1977). See also *Cothran v. Cothran*, 237 Ga. 487 (228 SE2d 872) (1976); *Larson v. Gambrell*, 157 Ga. App. 193 (276 SE2d 686) (1981). Since the Parental Custody Action was still pending at the time of the hearing, it follows the trial court had the legal authority to award permanent custody to appellees Mr. and Mrs. Turner notwithstanding the fact that they themselves had not initiated their own viable action seeking custody.

3. Appellant enumerates the grant of permanent custody to appellees Mr. and Mrs. Turner as erroneous for lack of sufficient evidence.

"[A]n award of child custody to a third party must be based upon more than the 'best interests' of the child because such an award is in derogation of the right to custody of the parent, in whose custody the law presumes the child's best interest will be served. Thus, it is only when the present unfitness of the parent is established by clear and convincing evidence that the trial judge is authorized to consider an award of custody to third parties. [Cit.] Therefore, if appellant has demonstrated that there has been a change in condition justifying a change in his child's custody, he is entitled to that custody absent a finding that he is 'unfit.' [Cit.]" *Larson v. Gambrell*, supra at 194. "The law contemplates that one of the natural parents will be awarded custody of the child unless the present unfitness of the parents is established by clear and convincing evidence at the hearing on permanent custody. Only then is the trial court authorized to consider an award of custody to third parties." *Childs v. Childs*, 237 Ga. 177, 178 (227 SE2d 49) (1976). See also *Blackburn v. Blackburn*, 249 Ga. 689 (292 SE2d 821) (1982).

The trial court's order granting permanent custody to appellees Mr. and Mrs. Turner contains a finding that both appellee Mrs. Mitchell and appellant are presently unfit. Compare *Childs v. Childs*, 237 Ga. 177 (227 SE2d 49) (1976) and 239 Ga. 304 (236 SE2d 646) (1977); *Larson v. Gambrell*, supra. However, the order erroneously fails to state that the trial court applied the proper standard of "clear and convincing" evidence in finding that present parental unfitness.

See *In re R. L. Y.*, 181 Ga. App. 14 (351 SE2d 243) (1986). "The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test." *In re B. D. C.*, 256 Ga. 511, 513 (350 SE2d 444) (1986). "[B]ecause the trial court did not make it clear that it applied the required [evidentiary] standard in this case, the order . . . must be reversed and the case remanded for further findings [and conclusions] by the trial court applying the correct standard." *In re R. L. Y.*, supra at 17.

To facilitate the entry of the new order, we reiterate the following: Custody *must* be awarded to one of the natural parents, either appellee Mrs. Mitchell or appellant, *unless* there is *clear and convincing evidence* that both are presently unfit. If the trial court finds there has been a change in condition justifying a change in custody from appellee Mrs. Mitchell but it cannot find that there is clear and convincing evidence of appellant's *present parental unfitness*, appellant must be awarded custody. That the trial court may be of the opinion that appellees Mr. and Mrs. Turner possess a superior fitness to appellant is immaterial. "A finding of unfitness must center on the parent alone, that is, can the parent provide for the child sufficiently so that the government is not forced to step in and separate the child from the parent. A court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational, or even moral advantages elsewhere. [Cit.] Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship. . . . The ability of a parent to raise his or her child may not be compared to the superior fitness of a third person. That ability must be examined in a scrutinous, abstract light. Only in custody disputes between parents may a court determine which party is more suitable to be awarded custody, this being the so-called 'best interest of the child' test." *Carvalho v. Lewis*, 247 Ga. 94, 95 (274 SE2d 471) (1981). If, after the trial court's entry of a new order, any losing party contends that the new findings and conclusions are not consistent with this opinion, such party may then avail himself of the provisions of OCGA § 5-6-35 and apply to this court for a discretionary appeal.

4. Appellant filed a motion requesting the trial court to dismiss all pleadings which had been filed by appellees' attorney. As the grounds for this motion, appellant asserted that appellees' attorney had a disqualifying conflict of interest in that he is the same attorney who had represented appellant in his 1983 Parental Visitation Rights Action. From July 1984 to the present, that attorney has represented appellees Mr. and Mrs. Turner and he has also represented appellee Mrs. Mitchell in the various visitation and custody actions. Appellant enumerates as error the trial court's refusal to grant his motion.

Standard 69 of the Standards of Conduct of the State Bar of

Georgia provides: "A lawyer shall not represent a client whose interests are adverse to the interests of a former client of the lawyer in any matter substantially related to the matter in which the lawyer represented the former client unless he has obtained written consent of the former client after full disclosure." Appellant has not given his written consent to his former attorney's representation of appellees. To the contrary, he has taken every opportunity to protest the participation of the attorney in the proceedings as counsel for appellees. There is no question that the matters in which the attorney has represented and is representing appellees is substantially related to the matter in which he formerly represented appellant, to wit: rights in and to the child. However, having already held in Division 2 that the Grandparents' Visitation Rights Action is long since over and that the pleading which initiated the Grandparents' Custody Action was both invalid and superfluous, we need not determine whether the dismissal of all pleadings filed on behalf of appellees by the attorney is a proper means of securing enforcement of Standard 69. Nevertheless, in any future proceedings in this or any other case involving the issue of the respective rights of appellant and appellees to and in the child, the trial court is instructed that, upon a proper motion by appellant, the attorney should be disqualified from appearing as counsel for appellees, insofar as there is an obvious conflict of interest.

5. Appellant also enumerates as error the trial court's failure to dismiss various contempt citations against him. However, the trial court has never denied appellant's motions to dismiss the contempt citations. It has simply never ruled on them. " 'This court sits to review *rulings* of the trial courts, and it will not pass upon questions on which no ruling has ever been made by the trial judge.' [Cits.]" (Emphasis in original.) *Ballard v. Waites*, 194 Ga. 427, 430 (5) (21 SE2d 848) (1942). The trial court having as yet made no ruling on any of the citations for contempt or the motions to dismiss them, the merits of this enumeration cannot be addressed.

6. The order granting permanent custody to appellees Mr. and Mrs. Turner is reversed and the case is remanded to the trial court for the entry of a new order which makes a determination as to custody which is not inconsistent with this opinion.

*Judgment reversed and case remanded with direction. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 5, 1987 —
REHEARING DENIED NOVEMBER 19, 1987 —

*Galen P. Alderman, Elsie H. Griner*, for appellant.
*William S. Perry*, for appellees.